# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANNA L. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-03959-TWP-MJD |
| | ) | |
| I.U. HEALTH RILEY CHILDREN'S HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant I.U. Health Riley Children's Hospital ("IU Health") (Filing No. 50).[1] Plaintiff Anna L. Thomas, ("Thomas"), initiated this action against her employer, IU Health, alleging violations under the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). IU Health seeks judgment as a matter of law asserting that Thomas was not a qualified individual with a disability entitled to the protections and 1reasonable accommodations of the ADA, and she was not an eligible employee entitled to the benefits of the FMLA. For the following reasons, the Court **grants in part and denies in part** IU Health's Motion.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the Thomas as the non-

---

[1] IU Health points out that Thomas "improperly" names it as IU Health Riley Children's Hospital, and its proper name is "Indiana University Health, Inc. d/b/a Riley Hospital for Children at IU Health" (Filing No. 20; Filing No. 21; Filing No. 22; Filing No. 24; Filing No. 42; Filing No. 46; Filing No. 47; Filing No. 50; Filing No. 51; Filing No. 62). Nevertheless, IU Health has not moved for the Court to correct its name in the caption, and has chosen to refer to itself as "IU Health". *Id.* As such, for now, the Court will continue to refer to the Defendant as "IU Health".

moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Thomas graduated from Indiana School of Nursing in 1999 and has been a Registered Nurse since that time. (Filing No. 61-1 at 2). She began working for IU Health as a surgical nurse at Riley Hospital for Children ("Riley") in the Perioperative Department in January 2002. *Id.* She served as a charge nurse in the last five years of her employment at Riley. *Id.*

Thomas has a history of back problems stemming from a back injury incurred while at work in 2005. (Filing No. 61-1 at 3.) On December 7, 2018, her condition deteriorated to the point where she "could barely move" and had "difficulty getting out of bed" and she "could not work." *Id.* She contacted her manager, DeAnn Martin ("Martin"), and informed Martin that she had "thrown out her back" and "may need surgery" and also "needed to take time off work." *Id.* Martin agreed to cover Thomas' shifts for the next two days from December 8, 2018 to December 9, 2018 (Filing No. 50-2 at 47). During this telephone call, Martin directed Thomas to "submit Family Medical Leave (FML) [sic] paperwork." (Filing No. 50-5 at 3.) A few days later, after noticing that she had not received any notification that a decision had been made regarding Thomas FMLA, Martin directed her Administrative Assistant, Gina Ballard ("Ballard"), to follow up with Thomas. *Id.*

On December 10, 2018, Ballard emailed Thomas and instructed her to immediately contact the new manager of the Perioperative Services Department, Mike King ("King") (Filing No. 50-2 at 94). Ballard instructed Thomas to see King about her attendance or to call him to "make arrangements to view and sign the attendance action form" and she provided King's telephone number. *Id.* On December 12, 2018, King emailed Thomas and informed her "I need to set up a time with you to discuss attendance." (Filing No. 50-2 at 96.)

Thomas responded to King on December 15, 2018 and agreed to a meeting concerning her attendance but informed King that she was in the "process of filing" Medical Leave of Absence ("MLOA") forms "due to having to move forward with another back surgery" and expressed uncertainty as to whether she would be able to return to work before undergoing this procedure (Filing No. 50-2 at 95). Thomas asked that King not "count any of [her] time off" against her or otherwise penalize her for any absence beginning December 8, 2018 as she expected such absences would be covered under FMLA after her MLOA was approved (Filing No. 50-2 at 96). Based on prior experience with requesting medical leave "a year and a half ago," Thomas anticipated that her surgeon's office would complete and return the requisite forms to IU Health and its Human Resources department at "a slow pace." *Id*. Thomas informed King that the "[t]urn around [sic] time was minimum of 3-4 weeks at the earliest last time" for her MLOA request process. *Id*. Thomas emailed King and provided him with her direct telephone number and asked him to call her cellphone to discuss attendance and her MLOA request. *Id*.

That same day, December 15, 2018, shortly after emailing King, Thomas emailed to Ballard the email communications between herself and King (Filing No. 50-2 at 95): "DeAnn had said [sic] you would know who I should contact or what I need to do to start MLOA forms process[]". *Id*. Thomas expressed to Ballard that despite having gone through the leave request process during her last episode with back surgery she had "since forgotten" what to do. *Id.* Thomas also asked who she should contact regarding short-term disability leave.

On December 17, 2018, Ballard sent an email to Thomas stating: "Anna, attached is a reference sheet with contacts and other information for your medical leave and short term." (Filing No. 50-2 at 97.) In an attachment to this email, Ballard included an IU Health "Leave of Absence Reference Sheet" document which included information for IU Health employees "considering or

taking absence" and how to assist these employees "during the leave of absence process." ([Filing No. 50-2 at 98](#).)  In a second email on the same day, Ballard directly replied to Thomas' December 15, 2019 email and informed Thomas that she had sent the Leave of Absence reference sheet with "information on your leave" to Thomas in another email ([Filing No. 50-2](#) a 95).

Following receipt of the Leave of Absence Reference Sheet which contained multiple sections covering the various types of leave of absence policies and their associated contact information and point-persons, Thomas contacted Matrix Absence Management ("Matrix") which was the contact listed under the "Short Term Disability (STD)" section of the reference sheet ([Filing No. 50-2](#) a 98).

Matrix is IU Health's short-term and long-term disability vendor ([Filing No. 50-3 at 20](#)). Matrix provided Thomas a "Health Care Provider Medical Certification" form which is used to determine whether the clinical condition of the requesting patient is disabling and instructs the patient to have it completed by their healthcare provider and returned to Matrix ([Filing No. 50-2 at 105](#)).

On December 27, 2018, Thomas visited OrthoIndy Hospital ("OrthoIndy") and was seen by the physician's assistant to Dr. David Schwartz ("Dr. Schwartz") ([Filing No. 50-2](#) a 56–58). Thomas was diagnosed with a "lumbar herniated disc" causing symptoms including but not limited to "low back pain" and "limited mobility." ([Filing No. 50-2 at 105](#)–106.) The medical certification form signed by Dr. Schwartz, stated that Thomas' next scheduled visit was for January 16, 2019. *Id*.  This was also the date given under the "Return to Work/Restrictions" section of the certification form, indicating Thomas was to be off work until at least January 16, 2019.  *Id.*  In the section on the medical certification form marked "First date Patient was Unable to Work," Dr. Schwartz

indicated that "12/8/18" was the first date Thomas was unable to work (Filing No. 50-2 at 105). This form was faxed to Matrix on December 27, 2018 (Filing No. 50-2 at 55–56).

On January 15, 2019, Thomas contacted IU Health's Senior Absence Management Consultant Deborah Combs ("Combs") for assistance with her request for a leave of absence (Filing No. 50-2 at 60; Filing No. 50-3 at 68–69). Combs' role included assisting employees with their options for leaves of absence and directing them to the appropriate vendors, administrators, and departments handling leave policies for FMLA, medical leave, or discretionary leave, among others (Filing No. 50-3 at 14). Combs also had the ability to submit documents and initiate MLOA requests with IU Health's third party leave vendors and administrators, on behalf of the employees at IU Health (Filing No. 50-3 at 43). Thomas explained her delay in contacting Combs until January 15, 2019 as being unaware that she was required to contact Combs directly for FMLA given that she already contacted Matrix (Filing No. 50-2 at 60). Thomas assumed that these vendors and departments were "all tied together" and contacting one vendor was enough to process her MLOA and FMLA leave. *Id*. Thomas' previous FMLA requests were for a different medical condition not associated with her back surgery and that the previous requests were for "intermittent leave" not "continuous" leave (Filing No. 50-2 at 53).

On January 15, 2019, Combs emailed Thomas (and courtesy copied King) and attempted to provide her with the medical leave of absence and accommodations request forms that Thomas needed to complete for a leave of absence request (Filing No. 50-3 at 69). However, Combs inadvertently sent another team member's documents instead, and Thomas did not receive the proper medical certification form for her FMLA leave until five days later. (Filing No. 50-3 at 40; Filing No. 50-3 at 71).

On January 17, 2019, Thomas emailed Combs expressing uncertainty about how to proceed with the incorrect documents mistakenly sent to her (Filing No. 50-3 at 67). On January 20, 2019, Combs replied to Thomas, acknowledged sending incorrect documents and attached the proper medical certification forms for FMLA leave (Filing No. 50-3 at 40; Filing No. 50-3 at 66). Combs instructed Thomas to give the corrected forms to her medical provider for completion and return the completed forms to Combs "for processing."  (Filing No. 50-3 at 66.)  By this time, Thomas had not been to work at the Perioperative Department since December 6, 2018. *Id*.

On January 28, 2019, Combs informed Thomas that because of the delay caused by her error in sending the incorrect forms, Thomas would have until February 12, 2019 to return her FMLA medical certifications.  (Filing No. 50-3 at 71–72.)  That same day, Thomas emailed Combs and explained that she was having difficulties receiving assistance from OrthoIndy to assess the status of her medical leave certification.  (Filing No. 50-3 at 66.)  Thomas indicated she needed the medical leave certifications from Dr. Schwartz that were previously sent to Matrix which stated her medical leave began on December 8, 2018 and that her return date to work was "TBD" [to be determined] until she was able to secure an appointment with the spinal specialists at Goodman Campbell Brain and Spine ("Goodman Campbell"). *Id*.  Thomas informed Combs that her medical records and referral from OrthoIndy were given to her spinal specialist at Goodman Campbell, and she was awaiting confirmation from the specialist's office for a time when she could schedule an appointment. *Id*. Combs requested that Thomas keep her updated about the status of her appointment with Goodman Campbell (Filing No. 50-3 at 65).

On February 7, 2019, Dr. Schwartz faxed Combs a completed IU Health "Medical LOA and/or Accommodation Request" leave of absence form ("MLOA Form") for Thomas (Filing No.

50-2 at 91–92). The MLOA Form was the same medical certification document that was sent to Thomas from Combs on January 20, 2019 (Filing No. 50-2 at 23).

The completed MLOA Form signed by Dr. Schwartz included a section marked "Reasons for Leave" which had two options to choose from: "Non-FMLA eligible" and "Exhausted FMLA" (Filing No. 50-2 at 91). The "Non-FMLA eligible" option was chosen on Thomas' MLOA Form. *Id*. Thomas marked the "Non-FMLA eligible" option on the MLOA Form based on being instructed to do so by Combs sometime before January 29, 2019 (Filing No. 50-2 at 24).

In the MLOA Form, Dr. Schwartz noted that Thomas' low back pain interfered with her ability to perform her job functions or otherwise affected her job performance (Filing No. 50-2 at 91-92). Under the section for suggestions on accommodations that would allow an employee to perform the essential functions of their job, Dr. Schwartz wrote that Thomas was "unable to perform all duties." (Filing No. 50-2 at 92.) In response to the question: "Do you anticipate the employee returning to their regular job?" Dr. Schwartz wrote: "address [the] MD at Goodman Campbell & Spine. Pt. off work until that appt [sic]." *Id*. The appointment at Goodman Campbell had been scheduled for February 26, 2019 (Filing No. 50-2 at 25). In the section for "Type of Leave Requested" it stated that Thomas would be away from work consecutively from December 8, 2018 to February 26, 2019 (Filing No. 50-2 at 92).

IU Health utilizes the services of FMLASource, a third party FMLA leave administrator. FMLASource receives an electronic file feed of IU Health's employees' demographic information and the number of hours these employees worked (File No. 50-3 at 11). Employees who have completed twelve (12) months of employment and have worked 1,250 hours in the previous 12 months' period before requesting leave are eligible for FMLA leave (Filing No. 50-3 at 10); *see also* 29 U.S.C. § 2612(a)(1).

On February 10, 2019, Combs emailed the Senior FMLA Account Manager at FMLASource to confirm that Thomas did not meet FMLA eligibility requirements. ([Filing No. 50-3 at 72](#)). An earlier determination that Thomas was FMLA-ineligible was made sometime on or before January 29, 2019, but Thomas was not informed of this designation until she was given the MLOA Form by Combs ([Filing No. 50-2 at 24](#); [Filing No. 50-3 at 43](#)). The Senior FMLA Account Manager confirmed that Thomas did not meet the requirements for FMLA eligibility based on the file feed that IU Health provided to FMLASource for the hours Thomas worked ([Filing No. 50-3 at 43](#)). IU Health sent FMLASource a file feed for Thomas with a 12-month range beginning February 5, 2018 to February 5, 2019 ([Filing No. 50-6 at 12](#)–19). The FMLASource file feed showed Thomas worked a total of 1,051.2 hours between February 5, 2018 and February 5, 2019 ([Filing No. 50-6 at 3](#)). IU Health ostensibly provided the February 5, 2018 start date and February 5, 2019 end date to FMLASource to correspond to the February 7, 2019 date when Dr. Schwartz faxed the completed MLOA Form to IU Health ([Filing No. 50-2 at 91](#)–92).

On February 15, 2019, Combs informed Thomas her MLOA request was denied ([Filing No. 50-2 at 67](#)). This was the first time that Thomas received a determination of her medical leave request ([Filing No. 50-2 at 66](#)). Combs then told Thomas that she was being involuntarily terminated because she had not been to work since December 6, 2018 and as of February 15, 2019 did not have an expected return date ([Filing No. 50-2 at 77](#)). When Thomas questioned Combs concerning her FMLA request, Combs informed Thomas that she was ineligible for FMLA leave because she had not worked enough hours ([Filing No. 50-2 at 14](#)).

Thomas' manager, Martin, informed Thomas that because her FMLA request was denied, the decision was made to terminate her for violation of IU Health's attendance policy ([Filing No. 50-5 at 3-4](#)). The Attendance Management policy reads "[r]egular attendance is a condition of

employment, and it is expected that unscheduled absences and tardiness will be kept to a minimum." (Filing No. 50-3 at 50, 74.) An "unscheduled absence" is "an absence not prearranged or approved at least the previous business day, authorizing the team member not to report for work as assigned." *Id.* 75. An occurrence is an unscheduled absence "or each sequence of consecutive unscheduled absences up to and including five (5) consecutive calendar days." *Id.* A team member who accrues seven occurrences in a rolling 12-month period is subject to employment termination and a team member whose employment is terminated for violating the Attendance Management policy is "not eligible for rehire for a period of five (5) years commencing on the date of the separation." *Id.* at 76. Absences protected by the FMLA and absences which occur during an approved MLOA do not count as occurrences. *Id.* at 80.

There is no indication that King, the Perioperative Services Department manager, ever set up a meeting to discuss attendance with Thomas before she received her employment decision terminating her for violating IU Health's attendance policy on February 15, 2019 (*see* Filing No. 50-2 at 96). There is no indication Thomas ever received an "attendance action sheet" or that it was signed by her as was requested by Martin's administrative assistant on December 10, 2018 (*see* Filing No. 50-2 at 94).

IU Health sent Thomas a letter on February 20, 2019 which confirmed her employment was terminated but that she was eligible for re-hire (Filing No. 50-2 at 68; Filing No. 50-2 at 108–109). However, Thomas also received documentation from IU Health's Human Resources department which stated she was ineligible for re-hire for at least five years due to too many absences under the attendance policy (Filing No. 50-2 at 39–43).

## II. <u>LEGAL STANDARD</u>

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante,* 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial*." Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties

nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc*., 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.  DISCUSSION

In her Complaint, Thomas alleges: Count I – IU Health's termination while she was on medical leave violated FMLA 29 U.S.C § 2601, *et seq*., Count II – Retaliation for taking medical leave in violation of FMLA 29 U.S.C § 2601, *et seq*, Count III – Discrimination based on her disability in violation of the ADA 42 U.S.C. 42 § 12101, *et seq*., and Count IV – Failure to accommodate her disability in violation of the ADA 42 § 12101, *et seq*.  (Filing No. 1 at 4–5.)  IU Health asks the Court to enter summary judgment in its favor and dismiss Thomas' ADA and FMLA claims, asserting that summary judgment is appropriate because:

1.  Thomas was not a "qualified individual" with a disability pursuant to the ADA statutory definition (Filing No. 51 at 7);

2.  IU Health had no obligation under the ADA to grant Thomas a request for an indefinite leave of absence (Filing No. 51 at 9);

3.  Thomas did not qualify as an "eligible employee" pursuant to the FMLA statute (Filing No. 51 at 14) and did not comply with IU Health's notice and procedural requirements (Filing No. 51 at 13); and

4.  Thomas cannot prove a causal connection exists between her initial notice to IU Health of her need for time off and the termination of her employment to prevail on her FMLA retaliation claim; (Filing No. 51 at 15).

The Court will first address the ADA claims before turning to the FMLA claims.

### A.  Summary Judgment on ADA Claims

Thomas alleges in Counts III and IV of her Complaint that she was discriminated against because of her disability and that IU Health failed to accommodate her disability in violation of 42 U.S.C. § 12101, *et seq*.  (Filing No. 1).  IU Health argues Thomas did not belong to the class of

disabled persons protected by the ADA and thus "no reasonable juror could conclude IU Health discriminated against [] Thomas or failed to accommodate [] Thomas because of her disability." (Filing No. 51 at 7.)

The ADA provides that a covered employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). IU Health does not dispute that Thomas was disabled, instead it argues that Thomas fails to meet the definition of a "qualified individual with a disability" and denies that it failed to provide Thomas a reasonable accommodations under the ADA § 12112(a).

### 1.    Qualified Individual with a Disability

The ADA makes it unlawful for an employer to discriminate against a "qualified individual on the basis of disability." 42 U.S.C § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). *Severson v. Heartland Woodcraft, Inc.,* 872 F.3d 476, 480 (7th Cir. 2017). The Seventh Circuit holds the determination of whether an individual is a "qualified individual with a disability" is a two-step test:

> "First, we consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, license, etc." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir.1996) (quoting 29 C.F.R. app. § 1630.2(m)). Second, if the individual does satisfy the position's prerequisites, we "consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* (quoting same).

*Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir.2001) (affirming, in part, employee was not qualified individual with disability under ADA for failure to perform essential job functions with or without reasonable accommodations). Whether an individual is a qualified individual with a disability is determined as of the time of the employment decision. *Bombard*, 92 F.3d at 563 (*citing* C.F.R. app. § 1630.2(m)).

IU Health asserts that Thomas could not perform the essential functions of her position for a multi-month period, thus she was not a qualified individual with a disability and not in the class of persons protected by the ADA (Filing No. 51 at 7). Since Thomas is not in this protected class, no reasonable juror could conclude IU Health discriminated against Thomas or failed to accommodate her disability, *id.*, so her ADA discrimination claim fails as a matter of law.

In response, Thomas asserts she is a qualified individual with a disability because she could: (1) satisfy the "requisite skill, experience, education, and other job-related requirements" of a Surgical Nurse in the Perioperative Department and (2) was able to "work the essential functions of the job with or without an accommodation" and needed the "reasonable accommodation" of being off from work from December 8, 2018 until February 26, 2019. *Id.* Thomas asserts she was not seeking an indefinite leave of absence and, instead, was requesting "an additional 11 days" of medical leave to February 26, 2019 when she received her adverse employment decision on February 15, 2019 (Filing No. 60 at 25). Thomas contends she was entitled this additional leave through the FMLA (Filing No. 60 at 24).

In their reply, IU Health asserts that Thomas made it clear that she required leave for an unknown period and Thomas was unsure of when she would be able to return to work (Filing No. 62 at 11). IU Health argues that Thomas' medical provider made it clear that he could not provide

a definite date at which Thomas was to return to work when requested by IU Health's Absence Management Consultant, Combs. *Id.*

With respect to the first inquiry of the two-step test, Thomas clearly satisfied the "requisite skill, experience, education, and other job-related requirements" of the Surgical Nurse position in the Perioperative Department at Riley Hospital for Children. Thomas is a graduate of Indiana University School of Nursing and received a Bachelor of Science in Nursing in 1999. It is undisputed that Thomas worked at Riley Hospital for Children for over 15 years as a surgical nurse and served as a charge nurse within the Perioperative Department in her last five (5) years of employment. (Filing No. 60 at 2-3).

Concerning the second inquiry: the Court must determine whether or not Thomas has presented evidence that she could perform the essential functions of the Surgical Nurse in the Perioperative Department, with or without reasonable accommodation as of February 15, 2019 – the date of the employment decision. *See, Hamm v. Exxon Mobil Corp.*, 223 F. App'x 506, 508 (7th Cir. 2007) (finding no dispute plaintiff satisfied first inquiry the Court turned to second inquiry). Thomas must demonstrate that she could attend work at the time of IU Health's adverse employment decision on February 15, 2019 with or without reasonable accommodations. The plaintiff "bears the burden of proof on the issue of whether he is a 'qualified individual' under the ADA". *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) (quoting *DeLuca v. Winer Indus.*, 53 F.3d 793, 797 n. 3 (7th Cir.1995)).

The Court agrees with IU Health that Thomas could not perform the essential functions of the Surgical Nurse position in the Perioperative Department with or without reasonable accommodations as of the time of the employment decision and so fails the second inquiry of the two-step test to determine her status as a qualified individual.

The designated evidence shows that Thomas was unable to return to her regular perioperative surgical nurse position in February 2019 (Filing No. 50-2 at 36). Between February 7, 2019[2] up to February 15, 2019 when she was terminated, Thomas reported no change in her return-to-work status (Filing No. 50-2 at 84). Thomas admitted that during the month of February 2019, she "could not work the job that I had been doing." (Filing No. 50-2 at 87.) Thomas' admission is supported by her medical provider, Dr. Schwartz, who noted on the February 7, 2019 MLOA Form that Thomas was "unable to perform all job duties" and her "pain interferes with [her] ability to perform the functions of her job." (Filing No. 60 at 8.)

Thomas asserts in her Brief in Opposition to IU Health's Motion for Summary Judgment that the accommodation she "needed to be able to do her job" was to "be off work from December 8, 2018, to February 26, 2019." (Filing No. 60 at 24.) In effect, Thomas acknowledged her inability to work but contends she should have been accommodated "by being allowed *not* to work." *Byrne v. Avon Prod., Inc*., 328 F.3d 379, 380–81 (7th Cir. 2003) ("Not working is not a means to perform the job's essential functions").

Thomas asserts that her case is "similar" to the plaintiff's case in *U.S. Equal Emp. Opportunity Comm'n v. S & C Elec. Co.*, 303 F. Supp. 3d 687, 688 (N.D. Ill. 2018). (Filing No. 60 at 25.) However the Court disagrees. The facts in *S & C Elec. Co.* present a situation where an employee was "ready, willing, and able to return to his position without any accommodation" and had "received medical clearance to return to work" at the time of the decision to terminate his employment. *Id*. at 689. Thomas did not present evidence that she was either cleared to return to

[2] February 15, 2019 is the date Dr. Schwartz submitted Thomas' MLOA Form and noted Thomas' inability to return to work until at least February 26, 2019 when her appointment at Goodman Campbell was scheduled. (Filing No. 60 at 8). Dr. Schwartz gave no indication Thomas would be able to return to work after February 26, 2019. (Filing No. 50-2 at 92.)

work or similarly "ready, willing, and able to return" to her position on February 15, 2019 when she received her employment decision (Filing No. 50-2 at 36, 84, 87).

Thomas has not designated evidence which shows she was a qualified individual with a disability. Consequently, Thomas was removed from the class protected by the ADA. Thus, IU Health's request for summary judgment on Thomas' ADA discrimination claim is **granted** because Thomas was not a qualified individual with a disability at the time of her adverse employment decision.

### 2.      Failure to Provide Reasonable Accommodations

Because the Court has determined that Thomas was not a qualified individual with a disability pursuant to the ADA, her claim that she was entitled to "reasonable accommodations" under the statute is rendered moot for the reasons explained below.

In order for Thomas to establish a *prima facie* case of IU Health's failure to accommodate in accordance with the ADA, she must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (quoting *Sears, Roebuck & Co.*, 417 F.3d at 797)). To survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of her claim. *Id* at 748 (quoting *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir.2009)).

Thomas failed to produce sufficient evidence to demonstrate she was a qualified individual with a disability who was able to perform the essential functions of a Surgical Nurse in the Perioperative Department even with a reasonable accommodation at the time of her employment decision on February 15, 2019 (Filing No. 50-2 at 36, 84, 87).

Thomas asserts that the accommodation she needed to be able perform the essential functions of the position was an extended leave of absence (Filing No. 60 at 24). IU Health contends that Thomas' requested leave did not have an end date and so IU Health was under no obligation to accommodate a request for "indefinite leave." (Filing No. 51 at 11.) IU Health relies on well-established case law that "no business is 'obligated to tolerate erratic, unreliable attendance.'" *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 949 (7th Cir.2001) (en banc) (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir.1999)).

Thomas asserts she was seeking leave to a date certain, specifically February 26, 2019, and she was "not seeking an indefinite leave of absence" but rather "an additional 11 days" at the time of her employment decision (Filing No. 60 at 25). But the facts in the record belie Thomas' assertion that a date certain to return to work was provided and known to IU Health. The two notes from the office of Dr. Schwartz at OrthoIndy on January 27 and February 7, 2019 failed to establish a definitive date Thomas would be able to return to work. (Filing No. 60 at 7–8.) When the leave requested by an employee "does not have a definitive end date, the employee's attendance (or lack thereof) is most certainly characterized as unreliable." *DeLon v. Eli Lilly & Co.*, 990 F. Supp. 2d 865, 874 (S.D. Ind. 2013) *See Oestringer v. Dillard Store Servs.*, Inc., 92 F. Appx. 339, 342 (7th Cir.2004) ("[Plaintiff's] extended absence—*which had no definite endpoint*—shows that she was not a qualified individual when [her employer] terminated her employment because she could not attend work.") (emphasis in original).

Thomas informed IU Health on January 28, 2019 that her return to work status was "TBD" [to be determined] until she had her appointment with the spinal doctors at Goodman Campbell, which was ultimately scheduled for February 26, 2019. (Filing No. 50-3 at 66, 73.) Neither Thomas nor her doctors at OrthoIndy and Goodman Campbell were able to provide a date certain

that Thomas would be able to return to work when Thomas received her employment decision on February 15, 2019. ([Filing No. 50-2 at 67](#); [Filing No. 60 at 7](#)–8.)

The ADA only protects a qualified individual with a disability. *See* 42 U.S.C.A. § 12101 et seq.. The Court determines that IU Health was under no obligation under the ADA to grant Thomas' request for a leave with an unreliable return date and such a request was not a reasonable accommodation. Finally, Thomas was not a qualified individual with a disability covered by the ADA's reasonable accommodations provisions. Accordingly, IU Health's request for summary judgment on Thomas' ADA claims that IU Health failed to provide reasonable accommodations is **granted**.

**B.   Summary Judgment on FMLA Claims**

The Court now turns to IU Health's request for summary judgment on Thomas' FMLA claims. In Counts I and II of the Complaint, Thomas asserts IU Health's employment decision terminating her while "on medical leave" violated the FMLA 29 U.S.C. § 2601, *et seq.*, and IU Health retaliated against Thomas for taking such "medical leave" in violation of the same statute, respectively. ([Filing No. 1 at 4](#).)

**1.   FMLA Interference Claim**

IU Health contends the FMLA interference claims fail for three reasons: Thomas did not comply with IU Health's notice and procedural requirements, so she was not entitled to benefits under the FMLA, ([Filing No. 51 at 13](#)); Thomas did not qualify as an "eligible employee" pursuant to the FMLA statutory definition, ([Filing No. 51 at 14](#)); and Thomas cannot prove a causal connection exists between her initial notice to IU Health that she would need time off for surgery and the termination of her employment, ([Filing No. 51 at 15](#)).

In Count I, Thomas alleges that IU Health violated the FMLA by terminating her while she was "on medical leave." (Filing No. 1.) However, Thomas expounds on this claim in her summary judgment response brief to include specific charges of FMLA interference committed by IU Health. (Filing No. 60 at 16.) The Court agrees that Thomas' FMLA violation claim in Count I covers FMLA interference.

The FMLA prohibits employers from retaliating against or interfering with an employee's use of or attempt to exercise her right to FMLA leave. *See Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010); *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008). To support an FMLA interference claim, a plaintiff must show: "(1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled." *Guzman v. Brown Cty.*, 884 F.3d 633, 638 (7th Cir. 2018). The Court will address each prong in turn.

### a. Prong 1: Eligible Employee for FMLA Protections

IU Health asserts Thomas did not qualify as an "eligible employee" under the FMLA when she contacted Absence Management in January 2019 so her FMLA interference claim fails as a matter of law because she does not satisfy the initial element. (Filing No. 51 at 14.)

"Eligible employee" means an employee "who has been employed for at least 12 months by the employer with respect to whom leave is requested under section 2612 …; and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C.A § 2611 (West). The determination of whether an employee meets the hours of service requirement and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start. 29 C.F.R. § 825.110(d).

IU Health asserts that earliest date on which Thomas' eligibility for FMLA leave can be evaluated is January 15, 2019 because that is when Thomas contacted Combs for assistance with initiating her FMLA leave with FMLASource. (Filing No. 51 at 14.) IU Health argues that based on an FMLA leave beginning on January 15, 2019, Thomas only worked 1,111.5 total hours in the twelve months preceding this request date which made her ineligible for FMLA leave. *Id* at 15.

Thomas responds that her leave was to start on December 8, 2018 after putting IU Health on notice on December 7, 2018 of her intention to take leave for an FMLA-qualifying reason (Filing No. 60 at 11). Thomas asserts that her payroll records show the total hours worked from the preceding twelve months of the December 7, 2018--the notice date to IU Health--equaled 1,267.4 hours which entitled her to a twelve-week FMLA leave. *Id*.

IU Health counters that it was not required to provide FMLA leave for Thomas beginning December 8, 2018 to January 14, 2019 because of Thomas' failure to contact FMLASource until January 15, 2019 which entitled IU Health to deny her request for FMLA leave for that period (Filing No. 62 at 7). IU Health asserts that it properly denied Thomas' leave request beginning January 15, 2019 because Thomas worked 1,111.5 hours between January 15, 2018 and January 15, 2019 and this was 135 hours short of the 1,250 hours needed for Thomas to be eligible for FMLA leave (Filing No. 62 at 8).

The Court disagrees with IU Health's contention that Thomas' failure to contact FMLASource until January 15, 2019 automatically entitled IU Health to deny her FMLA leave request from December 8, 2018 to January 14, 2019.

An employee's notice of leave for an FMLA-qualifying reason triggers a burden-shift to the employer to provide the mandatory notices of FMLA eligibility, rights, and responsibilities, and FMLA designation within five business days. 29 C.F.R. §§ 825.301(a); 825.300(b)(c)(d); *see*

*Lutes v. United Trailers*, Inc., 950 F.3d 359, 366 (7th Cir. 2020) (finding that even if [plaintiff] failed to comply with FMLA by failing to comply with employer absence policy, he did so *after* [defendant] would have violated FMLA).

The evidence submitted shows that IU Health did not provide these mandatory notices to Thomas five business days after Thomas informed IU Health that she wanted to take leave for an FMLA-qualifying reason. "Failure to follow the notice requirements set forth in [§ 825.300] may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300.

Based on the evidence submitted, a reasonable jury could conclude Thomas' FMLA leave was to start on December 8, 2018, and that she had sufficient total hours worked in the preceding twelve months at the time she first requested leave for an FMLA-qualifying reason based on IU Health's violation of the FMLA employer notice requirements in 29 U.S.C § 825.300. Viewing the evidence in the light most favorable to Thomas as the non-moving party, the Court finds that the evidence submitted presents a genuine issue of material fact in dispute regarding Thomas' contention that her FMLA leave was to start on December 8, 2018 after she provided notice of her intention to take leave for an FMLA-qualifying reason.

Accordingly, the Court finds that a genuine issue of material fact exists as to whether Thomas was an "eligible employee" under the FMLA.

### b.      Prong 2: Employer Covered by FMLA

For the second prong of the inquiry determining whether the employer is covered by FMLA, it is undisputed that IU Health is covered by the statute.

###### c.    **Prong 3: Employee Entitled to Leave**

Addressing the third prong of the FMLA interference inquiry, an employee is entitled to FMLA leave if she suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D); *see also Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir.2005) (holding that eligible employees are entitled to 12 weeks unpaid leave per year for serious health conditions rendering them unable to perform their job).  Thus, for Thomas to have been entitled to FMLA leave, she must have suffered from a "serious health condition," and she must have been unable to perform the duties of a surgical nurse.  *See Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998).

FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11). Thomas asserts, and IU Health does not dispute, that her back pain and injury qualify as a "serious health condition" that involved continuing treatment.  (Filing No. 60 at 18.)  The term "treatment" is defined in relevant part as: "examinations to determine if a serious health condition exists and evaluations of the condition."  29 C.F.R. § 825.113.

The second requirement that Thomas must satisfy to be entitled to FMLA leave under the "serious health condition" subsection of the third prong of the FMLA interference inquiry is demonstrating that her health prevented her from performing the duties of a surgical nurse.  U.S.C. § 2612(a)(1)(D); *see also Jones v. C & D Techs., Inc.*, 684 F.3d 673, 677 (7th Cir. 2012).

Thomas asserts that she was incapacitated for over ten weeks with a serious health condition and was required to undergo a Magnetic Resonance Imaging (MRI) scan as well as ongoing treatment by her healthcare providers at least three times while being unable to return to

work.  (Filing No. 60 at 18.)  IU Health does not dispute this.  Thomas' medical certification form stated that she was "unable to perform all job duties" and her doctor signed off on her medical certification documents that she was to be off work beginning December 8, 2018 up to and until at least February 26, 2019, (Filing No. 50-2 at 91–92).  IU Health does not dispute this.  The designated evidence is sufficient to determine that Thomas satisfies the third prong of the FMLA interference inquiry.  Thomas suffered from a serious health condition that left her unable to perform the functions of her position, which entitled her to take FMLA leave.

### d.       Prong 4: Employee's Sufficient Notice of Intent to Take Leave

The fourth prong of the FMLA interference inquiry concerns whether the plaintiff-employee provided sufficient notice of her intent to take leave. *See Guzman*, 884 F.3d at 633.

IU Health argues that Thomas' FMLA interference claims fail as a matter of law because she did not comply with the established notice and procedural requirements and thus failed to provide sufficient notice (Filing No. 51 at 11; Filing No. 62 at 3).  IU Health asserts that Thomas' failure to contact FMLASource after being directed to do so on December 17, 2018 (when Thomas was provided the MLOA Reference Sheet) is fatal to her FMLA interference claim as it is in violation of IU Health's Family Medical Leave (FML) and Domestic Partner Leave (DPL) Procedures ("FML Procedures") (Filing No. 51 at 13).  IU Health's FML Procedures mirrors the language of IU Health's MLOA Reference Sheet's FMLA section, stating that "[t]eam members in need of time off from work…should contact FMLASource…to initiate their claim" and provides contact information for FMLASource (Filing No. 50-3 at 57).

Thomas responds in her Brief in Opposition that she believed contacting Matrix was enough to initiate her FMLA leave request (Filing No. 50-2 at 60). The designated evidence reflects that Thomas informed Combs that she was not told who to contact to assist her with her

MLOA request (Filing No. 50-3 at 2). Thomas believed that IU Health was sufficiently put on notice of her intention to take leave under FMLA when she informed Martin on December 7, 2018 of her back pain and injury and her need to take time off beginning December 8, 2018 (Filing No. 60 at 19). Thomas asserts this notice was sufficient under the FMLA because it caused Martin to instruct Thomas to submit FMLA paperwork in anticipation of a leave of absence under the statute. *Id*.

The Seventh Circuit holds that the "adequacy of notice is a fact-specific question" and generally an "employee's bare assertion to being 'sick' is insufficient" to put the employer on notice that the employee may qualify for FMLA leave. *Burnett*, 472 F.3d at 479 (quoting *Phillips v. Quebecor World RAI, Inc*., 450 F.3d 308, 311 (7th Cir.2006)); *see also Collins v. NTN–Bower Corp*., 272 F.3d 1006, 1008 (7th Cir.2001). However, the Seventh Circuit specifies that "[t]he employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition." *Burnett*, 472 F.3d at 479.

IU Health relies on the decision in *Reese v. Zimmer Prod., Inc*., No. 1:17-CV-105-TLS, 2018 WL 4510453, at *4 (N.D. Ind. Sept. 19, 2018) to argue that Thomas' failure to comply with IU Health's notice and procedural requirements authorized IU Health to deny her FMLA leave request (Filing No. 51 at 12). The decision in *Reese* turned on whether the notice the plaintiff provided to the defendant was sufficient notice of his intent to take leave. *Id* at 3. In *Reese*, sufficient notice constituted an employee putting both the defendant and its third party FMLA administrator on notice within two business days of realizing the need for leave. *Id* at 2. While similarities exist between the facts of *Reese* and this case, IU Health's reliance is misplaced.

In *Reese*, the defendant did not dispute that he failed to contact the third party FMLA administrator, nor did he dispute the defendant's usual practices and procedures for requesting

unforeseeable leave. *Id* at 4. Here, Thomas disputes she failed to contact FMLASource, because upon advise, she contacted Combs who is a liason for FMLASource. (Filing No. 60 at 1–2). Thomas also asserts that IU Health failed to provide sufficient employer notice of her FMLA eligibility which ultimately prejudiced and interfered with her FMLA rights (Filing No. 60 at 20).

On December 7, 2018, Martin informed Thomas to submit FMLA paperwork and followed up with her two days later through her administrative assistant to ensure Thomas had begun the process (Filing No. 50-5 at 3). The Seventh Circuit holds "the employee's duty is merely to place the employer on notice of a probable basis for FMLA leave" which is "enough to trigger the employer's duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement." *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 953 (7th Cir. 2004). Once she put Martin on notice, and sought out specific information about what she needed to do to file for medical leave, ten days later Thomas was simply given a reference sheet "with contact information for individuals that could assist with FMLA leave, short-term disability and other medical leave, [but] she provided no instruction regarding FMLA or the reference sheet". (Filing No. 61-1 at 4). Thomas argues the information sheet did not provide the specific information required by the FMLA. (Filing No. 60 at 20).

Construing the evidence in the light most favorable to Thomas, the Court finds that although IU Health asserts Thomas failed to follow the internal notice and procedures by contacting the FMLASource, a reasonable finder of fact could conclude that IU Health was put on notice of Thomas' intent to take leave on December 7, 2018 and the leave requested was FMLA-qualifying (Filing No. 51 at 12; Filing No. 60 at 20; Filing No. 62 at 4). Thus, the holding in *Reese* is inapplicable to this case.

IU Health cites *Righi v. SMC Corp.*, 632 F.3d 404 (7th Cir. 2011)[3], to support its argument that Thomas' failure to abide by its usual attendance policies foreclosed an FMLA claim ([Filing No. 51 at 12](#)).  In *Righi*, the Seventh Circuit held "[a]n employee's failure to comply with his employer's internal leave policies and procedures is a sufficient ground for termination and forecloses an FMLA claim." *Righi*, 632 F.3d at 411.  However, *Righi* does not control here because the designated evidence shows that although Thomas may have failed to abide by FMLA regulations by not complying with IU Health's usual notice procedures for reporting absences, IU Health violated the FMLA first by not informing Thomas of her FMLA-leave eligibility and designation within five business days as required by 29 C.F.R. §§ 825.301(a); 825.300(d).  These potential violations of the FMLA by both plaintiff and defendant were not present or examined in *Righi.*

In addition, IU Health asserts that it complied with the employer notice obligations required by the FMLA in 29 C.F.R. § 825.300(b)(1) ([Filing No. 62 at 6](#)).  IU Health contends that this Court "need not entertain" Thomas' argument that it failed to provide proper notice within five business days of learning of Thomas' possible FMLA-qualifying condition because Thomas sought unforeseeable leave and "her notice obligations arose under 29 U.S.C. § 825.303, not § 825.300." *Id*.  But IU Health misstates the applicable statute – § 825.303 governs *employee* FMLA notice obligations for unforeseeable leave and § 825.300 governs mandatory *employer* FMLA notice requirements. Thus, while IU Health is correct that Thomas' notice obligations are contained in § 825.303 for her unforeseeable FMLA leave request, IU Health had explicit obligations under § 825.300 to provide specific notices of eligibility, rights and responsibilities, and designation of

---

[3] The Court notes that *Righi* has been superseded by Regulation as Stated in *Gienapp v. Harbor Crest*, 7th Cir.(Ill.), June 24, 2014.

FMLA to Thomas. Failure to provide such notices by the employer can be deemed as interference of the employee's FMLA. 29 C.F.R. § 825.300(b)(c)(d)(e).

For all of these reasons, the Court finds that the designated evidence presents a genuine dispute of fact regarding whether Thomas presented sufficient notice of her intent to take FMLA. A reasonable jury might conclude that she did.

### e. Prong 5: Employer Denial of Employee's FMLA Benefits to Which They Are Entitled

The final prong of the FMLA interference inquiry is whether an employer denied a plaintiff-employee's FMLA benefits to which she was entitled. *See Goelzer*, 604 F.3d at 993. Thomas asserts that she was entitled to twelve weeks of leave beginning December 8, 2018 due to her qualification as an eligible employee under the FMLA with a serious health condition (Filing No. 60 at 19). She argues that she was off work on doctor's orders and on medical leave to which she was entitled for a little over nine weeks when IU Health denied her leave and terminated her employment in violation of FMLA. Thomas also asserts "direct evidence of interference", *id.* at 20, and that she was denied FMLA benefits she was entitled to because following her termination, IU Health changed the "re-hire status" of Thomas from eligible for re-hire to "ineligible for re-hire" because of her violation of the attendance policy. *Id.* at 23.

IU Health contends that Thomas' failure to contact FMLASource until January 15, 2019 entitled it to deny Thomas' request for FMLA leave for the period of December 8, 2018 and January 14, 2019 (Filing No. 62 at 7). IU Health asserts Thomas' leave request beginning January 15, 2019 was properly denied because Thomas worked 1,111.5 hours between January 15, 2018 and January 15, 2019 and did not meet the 1,250-hour threshold needed for her to be entitled FMLA leave. (Filing No. 62 at 8.)

As previously discussed, Thomas argues that her leave was to start on December 8, 2018 after she put IU Health on notice on December 7, 2018, ([Filing No. 60 at 11](#)). Thomas asserts that her total hours worked from the preceding twelve months of December 8, 2018 equaled 1,267.4 entitling her to FMLA leave. *Id.* The Court does not weigh the evidence at summary judgment but views the evidence in the light most favorable to Thomas as the non-moving party. The Court also acknowledges the issue presented by the interplay of dueling FMLA violations by Thomas and IU Health under "Prong 4" of the FMLA interference inquiry.

Thus, the Court finds that the evidence submitted presents a genuine issue of material fact in dispute regarding when Thomas' FMLA leave was supposed to start. The Court also finds a genuine issue of material fact exists as to whether Thomas had accumulated enough qualifying hours at the time she requested leave for an FMLA-qualifying reason to be entitled to the benefits that IU Health denied. For these reasons, the Court **denies** IU Health's request for summary judgment on Thomas' interference claims.

### 2. **FMLA Retaliation Claim**

"In order to prevail on a FMLA retaliation claim, a plaintiff must present evidence that she was subject to an adverse employment action that occurred because she requested or took FMLA leave." *Guzman*, 884 F.3d at 640. An FMLA retaliation claim requires proof of discriminatory or retaliatory intent, whereas an FMLA interference claim requires proof that the employer denied an employee's benefits under the FMLA. *Goelzer*, 604 F.3d at 995; *see also Shaffer v. AMA*, 662 F.3d 439, 443 (7th Cir. 2011).

A plaintiff alleging retaliation under the FMLA may proceed under "the direct method of proof" or the "indirect method of proof". *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015) (quoting *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir. 2009)); *see also,*

*e.g., Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir.2012); *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir.2009).

Thomas only addresses the direct method of proof in her Brief in Opposition. Under the direct proof method, the plaintiff must show that "(1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018).

IU Health asserts in its opening brief that Thomas' FMLA retaliation claim fails because no causal connection exists between her initial notice that she needed time off for back surgery and the termination of her employment (Filing No. 51 at 15). IU Health explains that the "gap of two months" between Thomas' protected activity and the retaliation (December 8, 2018 to February 15, 2019) is not enough to establish a causal connection between statutorily protected activity and the adverse employment decision (Filing No. 51 at 16).

IU Health asserts several factors constituted as "intervening events" which disrupted any chain of causation between Thomas' December 7, 2018 notice to IU Health and her February 15, 2019 termination. These factors include Thomas' failure to initiate a claim for FMLA leave, Thomas' doctor's instruction that she "could not work," and Thomas expressing uncertainty about when or if she could return to work. *Id.* IU Health argues that these factors caused it to deny Thomas' request for FMLA leave and this denial left Thomas "without protection under IU Health's Attendance Management policy." IU Health contends that it terminated Thomas' employment consistent with the terms of the attendance policy. *Id.* IU Health points out that there is no evidence in the record of negative statements about Thomas' request for FMLA leave or that IU Health treated Thomas differently than it treated other employees. *Id.*

The Court notes the latter of these factors presented by IU Health are elements of the alternative "indirect method of proof" for a FMLA retaliation claim and thus do not apply in this case. *See Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 904 (7th Cir. 2005).

Thomas responds that she engaged in protected activity when she requested and began her FMLA leave for a serious health condition (Filing No. 60 at 22). She argues that she suffered adverse employment actions both when IU Health terminated her, and when it changed her re-hire status to "ineligible for re-hire" after her termination. *Id*. Thomas argues her termination after taking time off to which she was entitled under FMLA demonstrates the causal link between her protected activity of requesting and taking FMLA leave and her adverse employment action because IU Health would not have terminated her but for her protected activity (Filing No. 60 at 23).

"To survive a motion for summary judgment on her claim of retaliation under the FMLA, [Thomas] had to submit evidence showing that [IU Health] demoted or fired her because []she took valid leave". *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 667 (7th Cir.2008). It is undisputed that Thomas took time off for her back injury and attempted to take FMLA leave which is a protected activity, and her termination qualifies as an adverse employment action. Applying this standard, Thomas has raised a genuine issue of material fact that she suffered retaliation under the FMLA. Specifically, she has offered evidence that IU Health denied her FMLA request and terminated her employment under the attendance policy, after IU Health failed to follow FMLA employer eligibility and designation notice requirements. IU Health also knew that her absences were attributable to her back injury. This evidence supports a causal connection between the adverse employment action and Thomas' FMLA protected activity. Viewing the evidence in the light most favorable to Thomas, the Court finds that she has submitted evidence sufficient to

establish a *prima facie* case of retaliatory intent under the FMLA. Accordingly, the Court **denies** IU Health's Motion for Summary Judgment on Thomas' FMLA retaliation claim.

### IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS in part and DENIES in part** Defendant IU Health's Motion for Summary Judgment (Filing No. 50).  IU Health is **granted** summary judgment on Thomas' ADA discrimination claim and failure to reasonably accommodate claim, and Counts III and IV are **dismissed**. IU Health is **denied** summary judgment on Thomas' FMLA interference and FMLA retaliation claims and Counts I and II, may proceed beyond the summary judgment stage.

**SO ORDERED.**

Date:  6/29/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@stowersandweddle.com

Bianca Black
LITTLER MENDELSON, P.C. (Indianapolis)
bblack@littler.com

Brian Lee Mosby
LITTLER MENDELSON, P.C.
bmosby@littler.com